# IN THE COURT OF APPEALS OF IOWA

No. 23-0680
Filed December 18, 2024

**IN THE MATTER OF THE ESTATE OF PAMELA ANN GAVIN, Deceased,**

**KAREN SUE RUELLE, n/k/a KAREN SUE BARNHART,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Katie Ranes, Judge.

A petitioner appeals the district court's denial of her petition to admit a will into probate. **REVERSED AND REMANDED.**

Della M. Arriaga of Arriaga Law Office PC, Des Moines, for appellant.

Kevin Cunningham of Cunningham & Kelso, P.L.L.C., Urbandale, for appellee.

Considered by Schumacher, P.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

For a will to be valid under Iowa law, two competent people must witness its signing by the testator. Those witnesses must also sign "as witnesses in the presence of the testator and in the presence of each other." Iowa Code § 633.279(1) (2023). And if the witnesses and testator all sign affidavits attesting to those and other requirements for execution of the will, the will is "self-proved" and may be admitted into probate without other evidence. *Id.* § 633.279(2). But is the will valid if the witnesses sign only the self-proving affidavit attached to the will without separately signing where they are listed as witnesses under the will's attestation clause?

The district court said no and denied Karen Barnhart's petition to admit her mother's will into probate. But under governing supreme court precedent, the witness signatures on the self-proving affidavit—which was attached to the will in sequentially numbered pages and dated the same day as testator's signature on the will—satisfy the statutory requirement for witnesses to sign the will. The district court thus erred in denying admission of the will on this basis and in refusing to accept further proof of the subscribing witnesses to remedy any defect in the self-proving affidavit.

We do not decide whether the district court was correct in the defect that it found with the self-proving affidavit because, regardless, the affidavit does not provide the needed proof of the circumstances of the witnesses' signatures. So the self-proving affidavit must be supplemented by other affidavits or testimony from the witnesses to have sufficient proof to admit the will into probate. We thus reverse and remand for further proceedings on Barnhart's petition to admit the will.

## I.  Background Facts and Proceedings

In March 2023, Barnhart petitioned to admit the will of her deceased mother—Pamela Gavin—to probate for small estate administration and sought to be appointed personal representative as nominated in the will.  With her petition, Barnhart filed an eight-page document titled "LAST WILL AND TESTAMENT OF PAMELA ANN GAVIN."  The first four pages set out Gavin's substantive testamentary instructions.  At the bottom of the fourth page, Gavin signed an attestation clause saying, "In testimony of which I now sign this Will, in the presence of the witnesses whose names appear below, and request that they witness my signature and attest to the execution of this Will, this 3 day of June, 2020, at Des Moines, Polk County, Iowa."  The number three is handwritten in a space left to record the date of execution while the rest of the clause is typed.

No witness names are listed on that fourth page.  But on the fifth page, the names and addresses of two people—Valerie Cramer and Sara McGinnis—are typed under a statement that Gavin signed the will "in the presence of each of us, who at his request and in his presence and in the presence of each other, have hereunto subscribed our names as witnesses, and we certify that the said Testator was of sound mind and under no duress at the time of execution."  This fifth page contains no handwritten signature by either witness.  But Cramer and McGinnis signed the sixth page, as did Gavin.  Under a heading "AFFIDAVIT," they attested:

> We, the undersigned, Pamela Ann Gavin, Valerie Cramer and Sara McGinnis, the testator and the witnesses, respectively, whose names are signed to the attached or foregoing instrument, being first duly sworn, declare to the undersigned authority that said instrument is the testator's will and that the testator willingly signed and executed such instrument, or expressly directed another to sign the same in the presence of the witnesses, as a free and voluntary act

for the purposes therein expressed; that said witnesses, and each of them, declare to the undersigned authority that such will was executed and acknowledged by the testator as the testator's will in their presence and that they, in the testator's presence, at the testator's request, and in the presence of each other, did subscribe their names thereto as attesting witnesses on the date of the date of such will; and that the testator, at the time of execution of such instrument, was of full age and of sound mind and that the witnesses were sixteen years of age or older and otherwise competent to be witnesses.

Below their signatures, Sara McGinnis signed as a notary public for the signatures of Gavin and Cramer. And on the seventh page, Cramer signed as notary public for the signature of McGinnis. Both notarial certificates state that the affidavit was "[s]ubscribed, sworn and acknowledged" on "this 3 day of June, 2020."

All seven of these pages appear to be prepared in the same font. And all seven contain sequential typed page numbers centered at the bottom of each page. All seven also contain a small line in the bottom right corner. Gavin appears to have initialed the first four pages (containing the substantive will provisions and Gavin's signed attestation clause) and the seventh page (containing the notarial certificate signed by Cramer). That line remains blank on the fifth and sixth pages.

The eighth attached page is not in the same font, numbered, or initialed. It is titled "Personal Property Distributions for Pamela Ann Gavin" and lists one specific item of tangible personal property and the person who is to receive it, as referenced in one of the substantive provisions of the will. Gavin's signature appears at the bottom of the page, next to a handwritten date of "6-3-20."

The district court set a hearing on the admission of the will to probate, explaining that "[t]he Court notes a number of irregularities in the execution of the offered Last Will & Testament." Two days after the order setting a hearing,

Barnhart's attorney, Cramer—the same person listed as one of the witnesses to the will—"request[ed] clarity on the Court's statement that there [are] a number of irregularities in the execution of the Last Will and Testament." Cramer asked for "an explanation of the issues to understand what the hearing is about" so she could "prepare for the hearing" and "explain the issues to the heirs." The record does not show any further court order before the hearing.

At the hearing, only Barnhart and her attorney appeared. The court opened the hearing by outlining the "irregularities that [it] noted in reviewing [the will] for admission," including the lack of witness signatures in the attestation clause, the cross-notarization of the self-proving affidavit, and the missing initials on two pages. When Barnhart's attorney pointed out the signatures of the witnesses were on the affidavit on the sixth page, the court reasoned "[t]hat's on the self-proving affidavit designated as an affidavit, not as a witness signature."

After realizing that she might be a material witness in any further proceeding on the will, Barnhart's attorney moved to withdraw from representing Barnhart and the estate. And the court granted the motion. The court also discussed its tentative plan to appoint a neutral administrator of the intestate estate if it denied admission of the will. Barnhart expressed some confused agreement—first responding, "Oh good. So you'll help me find someone?" and apologizing, "I'm sorry. I work 16 hours a day, and it's hard for me to do anything." But when the court explained that "this would let you be beneficiary, be heir, and not maybe worry about some of the administrator mess," Barnhart interrupted: "That I don't understand."

And so, the district court denied Barnhart's petition to admit the will to probate for insufficient proof. It explained in its written order that because "no

witness signatures were provided following the attestation clause, the Court found that proof could not be properly made by filing the testimony of a subscribing witnesses as there were no witnesses who the Court found [subscribed] their signatures to the Will." It also held that the self-proving affidavit was "improperly executed" because it "was not notarized by a non-witness third-party, but rather cross-notarized by the two purported witnesses to the Will themselves."

The district court instead opened an intestate estate and appointed an attorney to serve as administrator of the estate, recounting that Barnhart "stated her position on the record that she is in agreement with the appointment of a neutral third-party administrator to serve as the administrator of this Estate."

Barnhart did not move for the district court to reconsider or enlarge its ruling. Instead, five days after the order, she filed a notice of appeal. The Estate has taken no position in this appeal, waiving its right to file a brief.

## II.    Error Preservation

Before we can consider a claim of error on appeal, a party must first preserve the error by properly raising it in the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). This allows the district court a chance to fix the error itself "at a time when corrective action can be taken." *In re Marriage of Heiar*, 954 N.W.2d 464, 470 (Iowa Ct. App. 2020) (cleaned up). It also "preserve[s] judicial resources by avoiding proceedings that would have been rendered unnecessary had an earlier ruling on the issue been made." *Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000). And because it protects more "than simply the interests of the opposing party," we address whether error is preserved on our own even when the opposing party does not raise it. *Id.*

With this in mind, we cannot consider several issues that Barnhart raises for the first time on appeal. She argues the district court should have named her administrator of the estate. But she never asked for that in the district court, objected at the hearing when the court explained its tentative plan, or moved for reconsideration under rule 1.904 after the court appointed a neutral administrator. Indeed, she made a statement that the district court fairly took as agreement with the plan. So her actions in the district court did not preserve error on her challenge to the court's decision to appoint an administrator and thus we cannot consider it.

Barnhart also argues that the district court's denial of her petition to admit the will—and the court's doing so without giving notice of the specific irregularities in advance of the hearing as she requested—deprived her of an opportunity to be heard, lacked impartiality, and failed to follow the law in violation of the Iowa Code of Judicial Conduct.[1] But again, she did not make any of these arguments to the district court when that court could have done something to address them. And so, these issues are also not preserved for our consideration. We thus turn to the issues that are properly preserved—whether the district court erred in holding that the proposed will lacks the signature of two witnesses and the self-proving affidavit is invalid because of the cross-notarization by the two witnesses.

### III.    Validity of the Witness Signatures on the Will

"[T]o be valid," all wills executed in Iowa during or after 1964 must—in addition other requirements not at issue here—be "witnessed, at the testator's

---

[1] In support of these arguments, Barnhart relies on many documents that she erroneously included in her appendix even though they are not a part of the appellate record. *See* Iowa R. App. P. 6.801. We do not consider any of this evidence from outside the record for any purpose in this appeal.

request, by two competent persons who signed as witnesses in the presence of the testator and in the presence of each other." Iowa Code § 633.279(1). This witness requirement has a few discrete components. There must be two competent witnesses who are present when the testator signs the will.[2] *See id.* They must both be present with the testator when they sign the will. *See id.* The testator must have requested that they be witnesses. *See id.* And of critical importance here, they must sign the will. *See id.*

While the fact that two people signed a will as witnesses can be seen from the face of the will itself, the other requirements are not self-evident from the will. But Iowa law provides that a will "may be made self-proved at the time of its execution, or at any subsequent date," by the execution of a self-proving affidavit by the testator and the two witnesses "made before a person authorized to administer oaths and take acknowledgments under the laws of this state, and evidenced by such person's certificate, under seal, attached or annexed to the will." *Id.* § 633.279(2)(a). And the statute provides requirements for "form and content" that must be "substantially" followed. *Id.* The gist of the required content of the self-proving affidavit is that the testator and witnesses all attest that the witness requirement and other will-execution requirements were followed and that they all knew each other's identities. *See id.*

---

[2] There is no dispute about competency of the witnesses. "Any person who is sixteen years of age, or older, and who is competent to be a witness generally in this state, may act as an attesting witness to a will." Iowa Code § 633.280; *see also* Iowa R. Evid. 5.601 ("Every person is competent to be a witness unless a statute or rule provides otherwise.").

Ordinarily, the validity of a will is decided when someone opposing the will objects to its admission to probate or petitions to set the will aside if it has already been admitted to probate.[3]  *See id.* §§ 633.308, .310.[4]  But the district court may only admit a will to probate "upon proof of due execution of the will."  *Id.* § 633.293. And when a party petitions to admit a will, the court may decide on its own to set a hearing on the petition.  *See id.*  And ultimately, the court has a duty to "enter an order either admitting said will to probate, or disallowing probate because of insufficient proof thereof."  *Id.* § 633.298.

While "[a]n action objecting to the probate of a proffered will, or to set aside a will, is . . . an action at law" that may even be tried to a jury, an uncontested proceeding on a petition to admit a will is an equitable proceeding.  *Id.* § 633.311; *see also id.* § 633.33 ("Actions to set aside or contest wills, for the involuntary appointment of guardians and conservators, and for the establishment of contested claims shall be triable in probate as law actions, and all other matters triable in probate shall be tried by the probate court as a proceeding in equity."). We thus review the district court's denial of an uncontested petition to admit a will to probate de novo.  *See* Iowa R. App. P. 6.907.

Barnhart appeals such a district court order denying her uncontested petition to admit her mother's will to probate.  She argues that both of the district court's reasons for denying the will are mistaken—contending that the will has two

---

[3] The probate code also permits a declaratory judgment action to be brought by certain proponents of a will.  *See* Iowa Code § 633.320.

[4] Barnhart petitioned to admit the will to probate as a small estate under Iowa Chapter 635.  But these provisions of chapter 633 apply the same to small estates. *See* Iowa Code § 635.1 ("Unless otherwise provided in this chapter, the provisions of chapter 633 apply to an estate administered pursuant to this chapter.").

valid witness signatures on it and that the cross-notarization of the self-proving affidavit complies with the statute.[5]  As the district court correctly recognized, the lack of two witness signatures would be a fatal defect.  So we focus first on that basis for its ruling.

Barnhart points to signatures of the two witnesses on the self-proving affidavit—page six of the seven sequentially numbered pages of the filed proposed will—as satisfying the statutory requirement for witnesses signing the will.  The district court rejected this argument, reasoning that neither witness provided "a witness signature" because they only signed "on the self-proving affidavit designated as an affidavit."  But our supreme court held otherwise in *In re Estate of Fordonski*, 678 N.W.2d 413, 416 (Iowa 2004).

There, as here, the main body of the will had no witness signatures—only the signature of the testator.  *See Fordonski*, 678 N.W.2d at 414.  But just as here, two witnesses signed a self-proving affidavit attached to the will.[6]  *See id.*  And the trial court there, much like here, concluded that the signatures "were not signatures on the will" because the court "viewed the self-proving affidavit as a document extraneous to the will itself."  *Id.*

---

[5] The district court also mentioned the fact that two of the seven pages of the will with blanks for initialing by the testator were missing her initials.  But the court's reasoning does not seem to rest on this fact as an independent basis for its ruling. And in any event, while the omissions are curious, no provision of the probate code requires the initialing of every page of a will.  *See* Iowa Code ch. 633.

[6] Because the will here was filed electronically, the record does not show precisely how the paper pages were attached.  But the consistent font, sequential page numbering, consistent dates, and cross-references in the text of the documents to pages being attached are sufficient for us to find on our de novo review of the current record that the self-proving affidavit is attached to the will.

But the supreme court reversed, holding that the signatures on the self-proving affidavit attached to the rest of the will were "sufficient to satisfy the formalities of execution set forth in section 633.279(1)." *Id.* at 416. The court reasoned that "signatures of the witnesses may appear on a different sheet . . . without affecting the validity of the instrument provided that the sheets are connected by some method of physical attachment at the time of attestation." *Id.* (quoting 79 Am. Jur. *Wills* § 325, at 501–02 (1975)). While Barnhart did not cite *Estate of Fordonski* to the district court (or to us), we must follow this binding precedent that directly supports the argument she has consistently made. And so, we hold that the two witness signatures on the self-proving affidavit attached to the rest of the will satisfy the statutory requirement that two witnesses sign the will.

## IV.     Validity of the Self-Proving Affidavit

But recall, the witness-signature requirement is only one of the statutory requirements for a valid will. Barnhart tried to prove the others with the self-proving affidavit authorized by the statute. *See* Iowa Code § 633.279(2). And the district court held that the affidavit was invalid under the statute because it "was not notarized by a non-witness third party, but rather cross-notarized by the two purported witnesses to the Will themselves." We do not decide whether the district court was correct its interpretation of the notarization requirement because, regardless, the affidavit does not meet the statutory requirement for a self-proving affidavit. Indeed, the same case that gives Barnhart support for her critical win on the validity of the witness signatures undermines her attempt to rely on the self-proving affidavit to prove the other statutory requirements.

The supreme court in *Estate of Fordonski* agreed that the affidavit attached to the will in that case and "as proposed in section 633.279(2) contemplates that there will be witness signatures on the will separate from, and in addition to, the signatures of the affiants in the self-proving affidavit." *Fordonski*, 678 N.W.2d at 415. And while it reasoned this lack of a second signature did "not negate the fact that the language of the affidavit inescapably identifies two of the affiants as persons who witnessed [the] signing," it noted that the affidavit there "may not comport with the requirements for a self-proving affidavit." The supreme court did not have to definitively resolve the issue in *Estate of Fordonski* because the will proponents there submitted another affidavit to prove up the will's execution. *See id.* at 415 n.4. But we must.

And we think the supreme court's reasoning, the text of the statute, and the attestations in the self-proving affidavit here all compel the conclusion that this self-proving affidavit alone cannot provide the needed "proof of due execution." Iowa Code § 633.279(2)(b). The affidavit inaccurately states that the witnesses "names are signed to the attached or foregoing instrument," when they are not. They are signed only on that page. It says that "they, in the testator's presence, at the testator's request, and in the presence of each other, did subscribe their names *thereto* as attesting witnesses on the date of the date of such will," again, when they did not. (Emphasis added.) And the affidavit lacks a statement that says their signatures below on that very page—the ones that we are relying on as the signatures on the will—were in the presence of the testator and each other and at the testator's request. What's more, even if the attestations had been adjusted to accurately describe that there was only a single set of signatures intended to be

both on the will and an attestation of the circumstances of execution, that would run counter to the statutory requirement that the affidavit be "in form and content substantially" as set forth in the statute. *Id.* § 633.279(2)(a). And again, that statutorily proposed content refers to a separate set of signatures being signed on the will. *See id.*; *Fordonski*, 678 N.W.2d at 415.

But as the district court recognized, defects with the self-proving affidavit—unlike defects with the lack of witness signatures on the will—are curable. Even without a self-proving affidavit, the validity of the will may be proved "by the oral or written testimony of one or more of the subscribing witnesses to the will." Iowa Code § 633.295. Yet because the district court had concluded that the witnesses had not signed the will, the court did not permit Barnhart to present such supplementary evidence at the hearing or by further written submission before denying the petition. The court would have been correct that "proof could not be properly made" if it had been correct that the will was missing any witness signatures. But given our contrary holding that the will was signed by two witnesses, the court's limitation on presenting further evidence from the subscribing witnesses was also error. Barnhart should have the opportunity to offer her proof. We thus reverse the district court's denial of her petition to admit the will and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**